JOHN N. BOYLE, as Trustee in Bankruptcy of YOUROVETA HOME AND FOREIGN TRADE Co., INC., Respondent, *v.* GREGORY SEMENOFF, Appellant.

First Department, May 19, 1922.

Arrest — provision in order that it was without prejudice to right of plaintiff to supersede or supply defects in original proof not effective on appeal — cause of action on alleged judgment for conversion recovered in China — order of arrest improperly granted where no evidence of jurisdiction of Chinese court or that judgment was enforcible here — no evidence that judgment was for same conversion or that defendant was about to remove his property — cause of action on alleged conversion — order of arrest improperly granted where affidavits did not show evidentiary facts and complaint was on information and belief — order of arrest granted on two causes of action cannot be sustained unless authorized by each.

A provision in an order of arrest that the order is made without prejudice to any rights which the plaintiff has or may have to supersede or supply defects in the original proof cannot avail the plaintiff on appeal.

The order of arrest was improperly granted. The action was brought to recover over on a judgment recovered against the defendant in Manchuria, China, alleged to have been for the conversion of certain goods and in a separate count for the conversion of the goods. As to the first cause of action, the affidavits tend to show that the defendant was assuming to act as a military officer of high rank in command of an organized force of armed men operating in Eastern Siberia, Russia, and was committing unlawful acts, including the appropriation or confiscation of private property, but there is no competent evidence offered to show that the alleged judgment recovered against the defendant in China was recovered in a court of competent jurisdiction of the subject-matter or that the court had jurisdiction of the defendant or rendered a judgment against the defendant under circumstances and by procedure and evidence entitling the plaintiff by rule of comity to enforce it here. Furthermore, the plaintiff did not allege or show either that the judgment was recovered for the same conversion or that the defendant was about to remove or dispose of his property with intent to defraud his creditors as required by section 826, subdivision 10, and section 828 of the Civil Practice Act.

As to the count in conversion, the pleadings and papers on which the order is based are wholly insufficient, for the affidavits presented were based to a large extent on information and belief, without giving the sources of deponent's information, and, furthermore, the facts set forth were vague and indefinite and some of the affidavits were directed merely to an attack on the defendant's reputation and character which was not at all an issue in the action, and the material allegations of the complaint were on information and belief and the sources of information and the grounds for the belief are not shown. Likewise, the estimates with respect to the quantity and value of the goods claimed to have been converted are insufficient.

*It seems,* that an order of arrest granted on two causes of action cannot be sustained unless authorized by each of them.

APPEAL by the defendant, Gregory Semenoff, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 14th day of April, 1922, denying his motion to vacate the order of arrest made herein.

*Clark, Prentice & Roulstone* [*Ezra P. Prentice* of counsel; *Bernard L. Campe* with him on the brief], for the appellant.

*David W. Kahn* [*Edward S. Greenbaum* of counsel], for the respondent.

LAUGHLIN, J.:

On the 21st day of August, 1920, an involuntary petition in bankruptcy was filed against the Youroveta Home and Foreign Trade Co., Inc., in the United States District Court for the Southern District of New York, and the plaintiff and one Rosen were appointed its receivers, and thereafter and on the 28th of June, 1921, the plaintiff was duly appointed trustee and qualified, and, as such trustee, brought this action to recover over on a judg-

ment for rubles equivalent in value to $478,578, alleged to have been recovered on or about the 1st day of December, 1921, by the bankrupt against the defendant in an action duly instituted in the Procurator's Court, a court of general jurisdiction duly created under the laws of China, at Harbin, Manchuria, China, and also to recover the same amount for the alleged wrongful conversion by the defendant in the year 1919 " in the neighborhood " of Harbin, China, of woolen goods and other merchandise owned by and in the possession of the bankrupt. The two causes of action are alleged in separate counts. The first is on the judgment, but the nature of the cause of action upon which the recovery was had is not therein shown. It is, however, alleged in the count for conversion that the judgment was recovered for the acts therein alleged. The motion was made on the original papers; and no additional papers were presented by the plaintiff, but the order provides that it was made without prejudice " to any rights, if any, which the plaintiff has or may have to supersede or supply defects in the original proof." That reservation cannot avail plaintiff on this appeal. He has voluntarily submitted to an adjudication with respect to the sufficiency of his papers to sustain the order of arrest and, therefore, that is the only point presented for review.

The affidavits tend to show that the defendant was assuming to act as a military officer of high rank in command of an organized force of armed men operating in eastern Siberia, Russia, in the year 1919, and was committing unlawful acts, including the appropriation or confiscation of private property, not warranted by the rules of warfare recognized by civilized countries; but there is no competent evidence either of the due recovery of the judgment against him by the plaintiff or by the bankrupt nor of the taking of the bankrupt's property by him or by his order, and, moreover, it is to be inferred that in part, at least, defendant and the troops under his command were operating under orders from or in connection with a *de facto* government in that part of Russia, and while it is charged generally that it was rumored and reported that he had appropriated private property and property of the bankrupt, it does not appear whether in so doing he was executing orders of superior military authorities and taking the property for military purposes or for his own personal benefit. The only evidence with respect to the alleged recovery of a judgment is that, while the plaintiff and Rosen were acting as trustees, the latter, who had been a vice-president of the bankrupt and was familiar with its affairs in the Far East, was authorized by an order of the United States District Court, made October 19, 1920, on a unanimous

petition of the creditors to whom the facts with respect to the alleged conversion had been presented, to make a trip to the Far East for, among other things, the purpose of taking action respecting the conversion and the collecting of the claim of the bankrupt against the defendant; that Rosen made the trip, returning in April, 1921, and reported that he had been unable to collect the claim, but had made arrangements with Eugene A. Meyerovitch, who had formerly represented the bankrupt in the Far East, for bringing an action in the Chinese court by the trustee to enforce it, and shortly thereafter he went abroad, where he now is in connection with the work of the American Relief Agencies in Russia; that said Meyerovitch in December, 1921, wrote his brother, Joseph A. Meyerovitch, and cabled one of the attorneys, who represented the bankrupt prior to the petition in bankruptcy, with respect to the action brought in China, and on information and belief predicated thereon said attorney avers that in or about the month of December, 1921, " a judgment was duly recovered in behalf of the plaintiff against the defendant herein for the sum of 930,000 Gold Rubles; " that the defendant is justly indebted to the plaintiff in the sum of $478,578 over and above all counterclaims known to the plaintiff, and is a non-resident, but is now passing through the United States *en route* to Europe, and, according to reports and information received by the plaintiff, had, when he landed in Vancouver, several millions of dollars, and if he is permitted to depart, plaintiff and other creditors will lose all right to have said money applied in payment of their claims. Neither the cablegram nor the letter is presented excepting that an affidavit made by Joseph A. Meyerovitch shows that on or about the 22d of January, 1922, he received for the plaintiff, a letter from his brother Eugene, dated Harbin, December 24, 1921, written in Russian and referring to the bankrupt's " claim " against the defendant, and he sets forth the first paragraph thereof, only, as follows: " Hereby I wish to inform that the lawyer has won the case and has received a writ for about 930,000 gold rubles, which includes interest and court costs."

It is perfectly clear that there is a total lack of competent evidence that the court of China had jurisdiction of the subject-matter or acquired jurisdiction over defendant or rendered a judgment against the defendant under circumstances and by procedure and evidence entitling plaintiff by rules of comity to enforce it here. (See *Grubel* v. *Nassauer*, 210 N. Y. 149; *Hilton* v. *Guyot*, 159 U. S. 113.) But even if plaintiff showed the due recovery of a judgment in a foreign jurisdiction, that would not suffice. It was incumbent on the plaintiff to allege and show by affidavit either that the judgment was recovered for the same conversion, or

that the defendant is about to remove or dispose of his property with intent to defraud his creditors (*Baxter* v. *Drake,* 85 N. Y. 502; Civil Practice Act, §§ 828, 826, subd. 10) and this it failed to do.

The facts presented are wholly insufficient to sustain the order of arrest under the second count for conversion. An affidavit made by the secretary of the bankrupt shows that it was engaged in general importing and exporting with branches in Harbin and Vladivostok; that it shipped woolen and other goods to the Far East destined for European Russia, but, owing to unsettled conditions in Russia, decided to have them returned to the United States; that it received information from its representatives in the Far East, who are not even named, that " some of said merchandise was seized without authority of any kind by the defendant herein, Gregory Semenoff, and were converted to his own use " during the year 1919; that at the instance of the bankrupt, the matter was brought to the attention of our Department of State, and it cabled our local consul, instructing him to assist the bankrupt in securing a return of the merchandise; and that " according to information received in reply from the Far East, the defendant Semenoff admitted that he had seized said goods but denied any responsibility to said Youroveta Home and Foreign Company, Inc., and refused to either return the goods or pay for the same." It does not appear from whom the information was so received, nor is anything shown with respect thereto save the affiant's conclusion. The secretary states that he has no personal knowledge with respect to the goods or their value, but that, according to the records of the bankrupt, those so seized were " of the value of several hundred thousand dollars." It will be observed that neither the actual information, claimed to have been received from the Far East to the effect that some of the merchandise of the bankrupt was seized by the defendant without authority and that he admitted having seized it, nor the name of any person from or by whom it was received, is given. All information, presented with respect to the seizure of the property of the bankrupt by the defendant and its value and the place and circumstances relating to the seizure, is not only hearsay but, for the most part, secondary hearsay. There is no affidavit, letter or other communication purporting to have been made, written or sent by any one having actual knowledge with respect to such seizure or by whom or by whose order it was made. An affidavit by one of the attorneys for the bankrupt states *on information and belief* that it had certain merchandise which was shipped to Vladivostok for trans-shipment to Russia, but that became impossible and the merchandise was left at Vladivostok;

and that his information is derived from consultation with officers of the bankrupt, including said Rosen, and from papers and documents exhibited by them; that various officers of the company, prior to the filing of the petition in bankruptcy against it, informed him that its goods of the value of upwards of $400,000 had been converted by the defendant, and that unsuccessful efforts had been made to recover them; and that the defendant did not deny the taking of the property but refused to pay for it. The moving papers contain an affidavit made by .Brigadier-General Graves, U. S. A., who was in command of the American Expeditionary Force in Siberia from September 2, 1918, until April 1, 1920, to the effect that, from numerous reports received by him with respect to the activities of the defendant, he was led to believe that the defendant had no regard for life or the rights of individuals and " was nothing more than a bandit; " and that an armored train commanded by a Russian general, operating under the defendant's orders, fired on American troops guarding the Trans-Siberian railroad in their quarters in a box car, killing two soldiers. That affidavit is not pertinent to the issues for it does not tend to show the alleged conversion. It merely attacks defendant's reputation and character, which are not in issue here. Another affidavit made by Charles H. Smith, who from February 27, 1919, to July 1, 1921, was the American representative on the Inter-allied Railway Committee which had general supervision over the Siberian railroads, shows that he has known the defendant personally for many years; that the work of said committee was greatly hampered by the activities of defendant, who in numerous instances seized property belonging " to various parties and various nationals; " and that it was brought to the attention of the affiant that he seized certain property belonging to the bankrupt " in violation of the rules and regulations of the Committee, which specifically provided that no interference whatever should be made with the railway, including freight, except upon the order of the Allied Technical Board or Russian railway officials; " that his activities so seriously interfered with the work of the committee that the eight members thereof, each representing their respective governments, signed and sent a telegram " to the Kolchak government at Omak," requesting that defendant's interference with the railroad be stopped, and that to that end a peremptory telegram be sent to him at once, and that a copy thereof be sent to allied commanders; that from February 27, 1919, until July 1, 1921, to the knowledge of the affiant, defendant " was operating " in and about the Trans-Baikal region of Siberia and was generally regarded by the members of said committee " as a mere bandit " furthering his own ambitions

First Department, May, 1922. [Vol. 201

and operating as a " free-lance brigand," and that he had no official standing as representing any government. The only relevant facts stated in Mr. Smith's affidavit are that it was brought to his attention that the defendant seized certain property of the bankrupt, and that probably such seizure was from the railroad during transportation, for it is claimed to have been in violation of regulations made by a certain committee; but no place or date of such seizure is given or indicated, and no goods are described. The authority of the committee to make rules binding on the defendant or others does not appear. It is fairly to be inferred from the facts that the defendant was operating under the orders of one higher in command and that he had some connection with the *de facto* government, for the committee assumed that such government could, by order, stop his activities. It does not appear that he or those operating under his orders extended their raiding operations into China, where it is claimed that the goods were converted and one of the affidavits tends to show that they did not get beyond Vladivostok.

The affidavits, therefore, upon which the order of arrest was obtained, have no probative force, and the material allegations of the complaint are on information and belief, and the sources of information and grounds for belief are not shown. It thus appears that the evidentiary facts, essential to warrant the court in depriving the defendant of his liberty, are not shown. (*Burns* v. *Boland,* 70 App. Div. 555; *Price* v. *Levy,* 93 id. 274; *Barbrick* v. *Carrero,* 184 id. 160; *Alber* v. *Harris,* 126 id. 504; *Banque Agricole* v. *Ungureanu,* 53 id. 254; *Thompson* v. *Best,* 51 Hun, 641; S. C. more fully reported, 4 N. Y. Supp. 229.) The estimates with respect to the quantity and value of the goods claimed to have been converted are also insufficient. (*Barnes* v. *Goss,* 98 App. Div. 1; *Peterson* v. *Kirby,* 192 id. 707.) Were it not for the fact that the defendant was unsuccessful in his military or revolutionary endeavors and was obliged to leave Russia and thus happened to be passing through this country, plaintiff would be obliged to rely for any redress obtainable upon the courts in the jurisdiction into which the bankrupt voluntarily sent the goods and where the alleged conversion took place, or upon the State Department to enforce the claim. Plaintiff has doubtless made the best possible presentation of the facts, but, in the circumstances, I see no justification in making this case an exception on account of the inability of the plaintiff to present better evidence and of the charges of lawlessness made against the defendant, and on these grounds, relaxing the requirements of our procedure with respect to the sufficiency of papers to warrant the order of arrest. The defendant is a citizen and subject of Russia with which we now have no

treaty, and the alleged conversion may have been incidental to the revolution in that country, and justification therefor may be claimed on the ground of military necessity of war, for which redress may only be had through the Department of State.

It may be observed, although, if the foregoing views are sustained, it will not be necessary to decide the point, that since the order of arrest was granted on both causes of action it cannot be sustained unless authorized by each of them. (See *Madge* v. *Puig,* 71 N. Y. 608, revg. 12 Hun, 15; *American Union Telegraph Co.* v. *Middleton,* 80 N. Y. 408; *McGovern* v. *Payn,* 32 Barb. 83; *Smith* v. *Knapp,* 30 N. Y. 581. But see *Baxter* v. *Drake, supra.*)

It follows that the order should be reversed, with ten dollars costs and disbursements, and the motion granted and order of arrest vacated, with ten dollars costs.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs, and order of arrest vacated.